J-S39036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                  :            PENNSYLVANIA
                            :

                v.                   :

                            :

K.C.                              :

                            :

           Appellant         :      No. 436 EDA 2019

Appeal from the PCRA Order Entered January 16, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010044-2015

BEFORE: LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED SEPTEMBER 14, 2020**

K.C. (K.C)[1] appeals from the order entered by the Court of Common
Pleas of Philadelphia County (PCRA court) dismissing his timely first petition
filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-
9546. We affirm.

**I.**

On June 19, 2017, K.C. proceeded to a jury trial on charges of
aggravated assault and endangering the welfare of a child (EWOC)[2] for his

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Initials are used to denote the names of K.C., his former girlfriend, T.S., and
their minor son, R.S.C., in this Memorandum to protect the identity of the
child. **See** Superior Court I.O.P. 424(A).

[2] 18 Pa.C.S. §§ 2702(a) and 4304(a)(1), respectively.

assault on R.S.C. R.S.C. was four months old at the time and sustained severe injuries during the incident. Immediately before trial, the Commonwealth offered K.C. a plea agreement of not less than six nor more than twelve years' incarceration, followed by eight years of probation. (*See* N.T. Trial, 6/19/17, at 5). It explained that K.C. was facing a sentence at trial of not less than thirteen and one-half nor more than twenty-seven years of incarceration. (*See id.*). K.C. elected to go to trial and the Commonwealth presented its first day of testimony on June 20, 2017.

The testimony bore out that on June 30, 2015, K.C. picked R.S.C. up from T.S.'s home because she needed assistance with childcare. (*See* N.T. Trial, 6/20/17, at 72-73). R.S.C. was behaving normally at the time he left T.S.'s care and T.S. noticed nothing out of the ordinary. (*See id.* at 76). When T.S. called K.C. to check on R.S.C., K.C. told her that R.S.C. had rolled off the bed and had vomited, but was feeling better and had eaten. (*See id.* at 77). K.C. did not return R.S.C. home for two days, one day later than planned. (*See id.* at 73, 78). When K.C. arrived with R.S.C. at T.S.'s house on July 2, 2015, T.S. immediately noticed that R.S.C. was confused and had a problem with his gaze and/or vision. (*See id.* at 74). T.S. insisted on taking R.S.C. to Temple Hospital despite K.C.'s insinuations that she was exaggerating the cause for concern. (*See id.* at 75).

R.S.C. was transferred to St. Christopher's Hospital in critical condition and was admitted to the Intensive Care Unit. (*See id.* at 45, 48). He suffered

seizures, swelling to his brain and severe retinal hemorrhages leading to complete blindness in one eye. (*See id.* at 46-49). Dr. Maria McColgan, founding director of the Child Protection Program at the hospital, testified that R.S.C.'s serious injuries were "way out of proportion to a fall off the bed," which typically results in no injury at all or a minor bump on the head. (*Id.* at 50). R.S.C.'s "hemorrhages were severe, maybe the most severe I've ever seen in 17 years of doing this work." (*Id.* at 53). Dr. McColgan stated her diagnosis of inflicted traumatic head trauma and testified that no medical condition explained R.S.C.'s injuries, which were consistent with a significant use of force that a four month old could not produce. (*See id*. at 51-52). She explained that R.S.C.'s injuries were consistent with an individual shaking an infant forcefully, where the baby's head is moving back and forth and in circles. (*See id.* at 53-54). Dr. McColgan also opined that the injuries R.S.C. presented with were fresh and had been inflicted within hours or days of his admission to the hospital. (*See id.* at 57).

Philadelphia Police Detective Tyrone Green of the Special Victims Child Abuse Unit interviewed K.C. at the hospital. K.C. told the detective that R.S.C. fell out of bed at about 3:00 in the morning after acting "cranky and whinny" all day. (*Id.* at 133). Sarah Crawford, a social worker and investigator at the Philadelphia Department of Human Services (DHS), also interviewed K.C. at the hospital. K.C. informed her that R.S.C. accidentally fell out of a bouncer that was positioned on top of a bed. (*See id.* at 103-05).

On June 21, 2017, after the Commonwealth had presented the foregoing testimony but before it had rested its case, K.C. entered a negotiated guilty plea to the above-mentioned charges. The trial court conducted a colloquy at the guilty plea hearing, stating in part:

> The Court: In return for the plea, the DA is recommending a sentence of seven to fourteen with six years of probation.
>
> In order to adjust the charges as I've described, **has anyone made other promises to you in order to get you to plead guilty?**
>
> The Defendant: **No.**
>
>             *       *       *
>
> The Defendant: **I'm pleading because I'm going to lose the trial. I'm done. I'm done.**
>
>             *       *       *
>
> The Court: . . . The voluntariness of your plea is going to be apparent from this conversation that we're having, that you're doing this of your own free will and no one is forcing you to do this. Is anyone forcing you to do this?
>
> The Defendant: No, sir.

(N.T. Guilty Plea, 6/21/17, at 5, 7-8) (emphases added).

After the oral colloquy, K.C. averred that he signed the written guilty plea colloquy, that he read it and that he did not have any questions for counsel or the court about it. (***See id.*** at 11-12). The written form provides: "Nobody promised me anything or threatened me or forced me to plead guilty. ... I am satisfied with the advice and service I received from my lawyer. ... My lawyer left the final decision to me and I decided myself to plead guilty."

(Written Guilty Plea Colloquy, 6/21/17, at 1, 3). The trial court accepted K.C.'s plea and in accordance with the plea agreement, sentenced him to an aggregate term of not less than seven nor more than fourteen years' incarceration, followed by six years of probation. (*See* N.T. Guilty Plea, at 12, 15). K.C. did not file a direct appeal.

On April 13, 2018, K.C., acting *pro se*, filed the instant, timely PCRA petition. Appointed counsel filed an amended petition challenging the validity of K.C.'s guilty plea on the basis of ineffective assistance of counsel. Specifically, K.C. averred that counsel erroneously advised him that if he were convicted at trial, he would be subject to SORNA[3] registration requirements, but that he would not face these same consequences if he pled guilty. After consideration of the Commonwealth's response, the PCRA court issued notice of its intent to dismiss the PCRA petition without further proceedings. *See* Pa.R.Crim.P. 907(1). The PCRA court entered its order dismissing the PCRA petition on January 16, 2019, and K.C. timely appealed. K.C. and the PCRA court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

---

[3] Pennsylvania's Sexual Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10-9799.41. However, the charges to which K.C. pled guilty are not sexual offenses and, therefore, carry no SORNA implications.

## II.

## A.

K.C. challenges the effectiveness of plea counsel in connection with the entry of his guilty plea to aggravated assault and EWOC. **See** 42 Pa.C.S. § 9543(a)(2)(ii) (listing ineffective assistance of counsel as basis for PCRA relief).[4] "To be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different." **Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citation omitted). We presume that counsel has rendered effective assistance. **See id.**

A criminal defendant's right to effective counsel extends to the plea process. **See Commonwealth v. Brown**, 2020 WL 3968093 at *3 (Pa. Super. filed July 14, 2020).

> Under the PCRA, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the petitioner to enter an involuntary

---

[4] "We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citation omitted). "This review is limited to the findings of the PCRA court and the evidence of record." **Id.** (citation omitted). "We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." **Id.** (citation omitted).

or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* (citations omitted).

Additionally, the PCRA court may decline to hold a hearing under certain circumstances. "A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings." *Commonwealth v. Adams-Smith*, 209 A.3d 1011, 1019 (Pa. Super. 2019) (citation omitted). A PCRA court's decision to deny a request for an evidentiary hearing will not be overturned absent an abuse of discretion. *See Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015).

**B.**

K.C. contends that plea counsel's ineffective assistance rendered his guilty plea involuntary, entitling him to a new trial. The crux of K.C.'s claim is that counsel gave him affirmative, erroneous advice that he would avoid SORNA registration requirements by entering the plea instead of continuing with trial. K.C. further maintains that the trial court's guilty plea colloquy was deficient because it lacked any reference to the serious potential SORNA consequences, and the court instead merely relied on boilerplate colloquy

questions. K.C. also argues that the PCRA court erred in failing to hold an evidentiary hearing given these circumstances.

The record reflects that K.C. initially rejected the Commonwealth's offer of a plea agreement and chose to instead go forward with trial on the serious charges against him alleging violence against his infant son. On the first full day of trial, the Commonwealth presented immensely damaging testimony demonstrating that the critical injuries suffered by R.S.C. were caused by an individual exerting extreme force on the child, and that the likely shaking caused permanent injury, including blindness. Further, K.C. admitted to police and DHS personnel that his son was in his care during the relevant time period and his explanation was that R.N.C. had simply fallen off the bed. The PCRA court explained:

> [K.C.] entered into the plea agreement after the first full day of testimony in his jury trial. It is clear from the record that his four month old son [R.S.C.] suffered severe, if not life threatening injuries, resulting in his being left blind in one eye. The testimony of all of the witnesses was sufficient for a jury to conclude that these injuries occurred while [R.S.C.] was in [K.C.'s] custody. Additionally, the evidence was more than sufficient for the jury to conclude that his explanation, to all the witnesses, that [R.S.C.] fell off the bed, was belied by the severity of the injuries.
>
> Given these facts, it would have been remiss of trial counsel not to seek from the Commonwealth a new plea offer and recommend that [K.C.] accept it. Furthermore, in both the oral and written colloquies there is no mention of SORNA. [K.C.], in fact, stated that no one had made any promises to him to induce him to plead guilty. [He] was quite explicit in stating the reasons prompting him to plead, when he stated that "I'm pleading, because I'm going to lose the trial. I'm done. I'm done."

(PCRA Court Opinion, 8/22/19, at 11) (record citations omitted).

We agree with the PCRA court's assessment that the record demonstrates that K.C. entered an intelligent and voluntary negotiated guilty plea, following a thorough plea colloquy. K.C.'s claim that counsel induced him to plead guilty by misrepresenting SORNA consequences lacks record support. At the plea hearing, K.C. unequivocally stated that no one made any promises to induce him to plead guilty and that no one forced him to enter a plea. As the PCRA court points out, K.C. is bound by these statements that he made in open court, and he cannot now assert grounds for withdrawing the plea that contradict them. *See Commonwealth v. Willis*, 68 A.3d 997, 1009 (Pa. Super. 2013). Further, in considering the plausibility of K.C.'s claim regarding SORNA and his complaint that no mention of its ramifications were made at the plea hearing, such claims are nonsensical in light of the fact that he was facing charges of violence and not of sexual misconduct of any type. Therefore, there was no reason whatsoever for plea counsel or the trial court to reference SORNA.[5]

---

[5] We note K.C.'s claim that the PCRA court applied an incorrect standard to the third prong of the ineffectiveness test relating to prejudice lacks merit. Specifically, K.C. asserts the court required him to demonstrate that the result of his trial would have been different instead of the result of the guilty plea proceeding. However in its opinion, the PCRA court sets forth the correct standard that a petitioner must show the "outcome of the proceeding" would have been different and goes on to state the standard applicable to guilty pleas, *i.e.*, that a petitioner must show that counsel's ineffectiveness led to entry of an involuntary plea. (*See* PCRA Ct. Op., at 8-9).

Given that the record plainly demonstrates the voluntary nature of K.C.'s plea after he and his attorney heard and weighed the Commonwealth's extremely damaging evidence against him regarding the severe, permanent injuries caused to his infant son, we find K.C.'s claims of ineffective assistance of counsel meritless. Further, we conclude the PCRA court acted within its discretion when it declined to hold a hearing on the matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/20